THE NATIONAL BANK OF THE REPUBLIC OF CHICAGO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47764.    Promulgated November 22, 1934.

*F. C. Ludwig, Esq.,* and *Arthur J. Hughes, Esq.,* for the petitioner. *Harold Allen, Esq.,* for the respondent.

OPINION.

McMAHON: This is a proceeding for the redetermination of a deficiency in income taxes for the calendar year 1926 in the amount of $24,185.67.

The parties entered into the following stipulation of facts, which also defines the issue involved:

It is hereby stipulated by and between the parties hereto, by their respective solicitors, that the only issue in this Appeal is whether The National Bank of· the Republic of Chicago had the right to use the statutory net loss of The National City Bank of Chicago for the year 1924, amounting to One hundred

sixty-seven thousand five hundred seventy-six dollars and forty-seven cents ($167,576.47), as a deduction from its income for the year 1926; i. e., whether Petitioner is the same taxpayer as The National City Bank of Chicago and entitled to such deduction under Section 206 of the Revenue Act of 1926, in view of the fact that Petitioner claims to come within Section 203 of the Revenue Act of 1924, and claims to be, by reason thereof, the same entity for income tax purposes pursuant to Article 1574 of Regulations promulgated under said Section 203; and, for the purpose of determining this issue, it is stipulated that the admitted facts in this case are as follows:

1. That The National City Bank of Chicago was merged under the National Banking Act with The National Bank of the Republic of Chicago under the charter and title of The National Bank of the Republic of Chicago as of December 21, 1924, pursuant to a Certificate of Authority of the Comptroller of the Currency. The capital set-up of the constituent banks immediately prior to the merger, and of the bank resulting from their merger, is as follows:

THE NATIONAL CITY BANK OF CHICAGO

| | |
|---|---|
| Capital | $2,000,000.00 |
| Surplus | 1,000,000.00 |
| Undivided Profits | 622,553.83 |

THE NATIONAL BANK OF THE REPUBLIC OF CHICAGO

| | |
|---|---|
| Capital | $2,000,000.00 |
| Surplus | 1,000,000.00 |
| Undivided Profits | 928,777.91 |

THE NATIONAL BANK OF THE REPUBLIC OF CHICAGO
(Resulting Bank)

| | |
|---|---|
| Capital | $4,000,000.00 |
| Surplus | 1,000,000.00 |
| Undivided Profits | 500,000.00 |
| Contingent Reserve | 200,000.00 |

Under the plan, which was approved by said Comptroller, equal net assets over and above all liabilities in the sum of Two Million eight hundred fifty thousand dollars ($2,850,000.00) were contributed by each of these banks, making the capital set-up of the merged bank as above indicated; and under said plan the shareholders of each constituent bank received share for share in the merged bank in exchange for the old stock.

2. That under said Plan each of said banks contributed, in addition to Two million eight hundred fifty thousand dollars ($2,850,000.00) to make up the capital, surplus, undivided profits and contingent reserve of the merged bank, an additional sum of Two hundred fifty thousand dollars ($250,000.00) of cash assets toward the capitalization of a securities company to handle and conduct the investment business of said merged bank, which said Company was known as The National Republic Securities Company, with an authorized capital of Five hundred thousand dollars ($500,000.00); and that under said plan the shareholders of the merged bank secured a prorated Beneficial Interest in said Company in accordance with their stockholdings in the merged bank.

3. That the remaining assets of each bank, which were considered undesirable by the Examining Committee for the purpose of making up the capital, surplus and undivided profits of the merged bank, were transferred to Trustees for liquidation under a declaration of trust which was identical for each bank Certificates of Beneficial Interest in the Trusts so created were issued to the respective shareholders of each bank.

4. That under the Agreement between these banks all such excess assets or the proceeds thereof, were to be held as a guaranty fund to make good the

assets which each bank contributed to the merged bank. A small dividend was paid by the Trustees to the Republic shareholders, but no liquidating dividend has ever been paid to the shareholders of the said The National City Bank of Chicago for the reason that there is still owing to the merged bank approximately Fifteen thousand dollars ($15,000.00) on account of such guaranty liability, with only certain frozen assets in the Trust, which, under present conditions, will not be sufficient to satisfy said liability.

5. That the return of The National City Bank of Chicago for the calendar year 1924 showed a net loss per books; and a review by the Treasury Department of such return shows such net loss per books to be One hundred sixty-seven thousand five hundred seventy-six dollars and forty-seven cents ($167,576.47) and this is the same amount herein claimed by Petitioner as a deduction on its net taxable income for the calendar year ended December 31, 1926. The Commissioner, however, did not allow said sum as a deduction to be taken by Petitioner in its return for said year on the sole ground that Petitioner was not the same taxpayer under Section 206 of the Revenue Act of 1926.

6. That the National City Bank of Chicago and The National Bank of the Republic of Chicago, each filed separate returns annually up to the year of the merger. That The National City Bank of Chicago filed a return for the calendar year 1924, but has filed no return since that time. The National City Bank of Chicago did not surrender its charter at the time of such merger, and said bank has engaged in no business operations of any kind since the date of said merger.

At the hearing there was introduced in evidence Joint Exhibit A–1, which is a photostatic copy of the minutes of the meeting of the shareholders of the National City Bank of Chicago held December 17, 1924; Joint Exhibit B–2, which is a photostatic copy of the minutes of the meeting of the board of directors of the National Bank of the Republic of Chicago held on December 17, 1924; Joint Exhibit C–3, which is a certified copy of the certificate approving the consolidation of the petitioner and the National City Bank of Chicago, signed by the Comptroller of the Currency and dated December 20, 1924; and Joint Exhibit D–4, which is a photostatic copy of the minutes of a meeting of the shareholders of the petitioner held on December 17, 1924. All the above joint exhibits relate to the consolidation of the two banks. Such exhibits are incorporated herein by reference, but it is not deemed necessary to set forth any of their provisions, except as they are commented on herein.

The question presented is whether the petitioner is the same taxpayer as the National City Bank of Chicago within the meaning of section 206 (b) of the Revenue Act of 1926 [1] so as to entitle it to

---

[1] SEC. 206. (b) If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called " second year "), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called " third year ") ; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

deduct, in computing its net income for the year 1926, the net loss of the National City Bank of Chicago sustained during the year 1924. The petitioner is the entity which has continued to carry on the business formerly carried on by itself and also that formerly carried on by the National City Bank of Chicago in 1924, after the consolidation of the two companies in 1924 under an act of Congress entitled "An Act to provide for the consolidation of national banking associations." 40 Stat. 1043, 1044, approved Nov. 7, 1918. The Board has had this statute under consideration in several proceedings, including *National Bank of Commerce*, 19 B. T. A. 1080, where it is set forth fully.

In *Manufacturers Trust Co.*, 28 B. T. A. 1260, where facts were somewhat similar to those in the instant proceeding, we held that a national bank continuing after a consolidation or merger is not the same taxpayer, within the meaning of the net loss provisions of the statute, as the national bank with which it merged or consolidated.

In *New Colonial Ice Co.* v. *Commissioner*, 292 U. S. 435, affirming *New Colonial Ice Co.* v. *Commissioner*, 66 Fed. (2d) 480, which affirmed the decision of this Board in *New Colonial Ice Co.*, 24 B. T. A. 886, it was held that an original corporation and its successor through reorganization are separate taxable entities and that the second corporation is not entitled to deduct from its 1923 income a net loss of its predecessor for prior years under the provisions of section 204 (b) of the Revenue Act of 1921. The Supreme Court there stated in part:

When section 204 (b) is read with the general policy of the statutes in mind, as it should be, we think it cannot be regarded as giving any support to the deduction here claimed. It brings into the statutes an exceptional provision declaring that where for one year "any taxpayer has sustained a net loss" the same shall be deducted from the net income of "the taxpayer" for the succeeding taxable year; and, if such loss be in excess of the income for that year, the excess shall be deducted from the net income for the next succeeding taxable year. Its words are plain and free from ambiguity. Taken according to their natural import, they mean that the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed. And, as the section contains nothing which even approaches such an expression, it must be taken as not intended to make such a departure.

See also *Overbrook National Bank of Philadelphia*, 23 B. T. A. 1209; *Grange National Bank*, 22 B. T. A. 1209; *May Oil Burner Corporation*, 27 B. T. A. 1281, affirmed in *May Oil Burner Corporation* v. *Commissioner*, 71 Fed. (2d) 644; *Farmers Cotton Oil Co.*, 27 B. T. A. 105; and *Elliott-Granite Linen Corporation*, 26 B. T. A. 936. Also cf. *Charles E. Van Vleck*, 31 B. T. A. 433.

Upon the authority of the above cases we hold that the petitioner is not entitled to deduct, in computing its net income for the year 1926, the net loss sustained by the National City Bank of Chicago during the year 1924, since the petitioner is not the taxpayer which sustained the net loss in question.

The petitioner cites us the amendment to the National Banking Act passed by Congress on June 16, 1933, 48 Stat. 190, which contains, among other provisions, the following:

\* \* \* Upon such a consolidation, or upon a consolidation of two or more national banking associations, under section 33 of this title, the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions. \* \* \*

It is the petitioner's contention that this indicates an intention of Congress to clarify the purpose and intent of the law in view of the possible conflicting opinions as to the effect of a " merger " as distinguished from a " consolidation " under the state laws. Petitioner further states that this shows that it was never the intention of Congress that the resulting corporation under a consolidation under the National Banking Act should be considered as a new entity. We cannot agree with this contention. On the contrary it would seem to us that the amendment was made for the reason that such an amendment was necessary to change the existing law. What effect this provision might have upon a consolidation or merger occurring after its enactment we find it unnecessary to here determine. In our opinion it has no effect whatever upon the instant proceeding, since by its terms it does not purport to be retroactive.

The parties stipulated that the National City Bank of Chicago was " merged " under the National Banking Act with the petitioner under the charter and title of the petitioner, pursuant to a certificate of authority of the Comptroller of the Currency. The evidence discloses that the National City Bank of Chicago did not surrender its charter at the time of the so-called " merger " or later. The evidence also shows that the petitioner did not receive all of the assets of such bank. In his certificate the Comptroller of the Currency certified that the petitioner and the National City Bank of Chicago had been " consolidated " under the charter and title of the petitioner, within the purview of the National Banking Act, and approved such " consolidation." The applicable National Banking Act refers to " consolidation of national banking associations." Notwithstanding that the parties stipulated that the two corporations involved in this proceeding were " merged ", we have referred to the transaction as a " consolidation ", which is what the Comptroller approved. How-

ever, there may be some doubt as to whether, as a matter of law, there was a " merger " or " consolidation " within the ordinary meaning of those terms (see discussion of " merger " and " consolidation " in *Alfred R. L. Dohme*, 31 B. T. A. 671), and we find it unnecessary to, and specifically do not, determine that there was here a " merger " or " consolidation " in the ordinary sense. The Comptroller of the Currency proceeded upon the theory that there was a consolidation within the meaning of the National Banking Act. The evidence does disclose that the petitioner is not the same " taxpayer " which sustained the net loss in question, as heretofore pointed out.

Reviewed by the Board.

*Decision will be entered for the respondent.*

TRAMMELL dissents.